IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| YVETTE D. WOODY and SIMON D. WOODY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 15-cv-2747-SHM-tmp |
| AURORA COMMERCIAL CORPORATION, successor entity to Aurora Bank FSB; AURORA LOAN SERVICING, LLC; and NATIONSTAR MORTGAGE, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Before the Court is Defendants Aurora Commercial Corporation, Aurora Loan Services, LLC[1] (collectively "Aurora"), and Nationstar Mortgage, LLC's ("Nationstar") October 13, 2017 Motion for Summary Judgment. (ECF No. 50.) Plaintiffs Yvette D. Woody and Simon D. Woody responded on February 6, 2018. (ECF No. 64.) Defendants replied on February 23, 2018. (ECF No. 68.)

For the following reasons, the Motion for Summary Judgment is GRANTED.

---

[1] Defendants note that "Aurora Loan <u>Services</u>, LLC" is Aurora Loan's correct name, not "Aurora Loan <u>Servicing</u>, LLC," as stated in the Complaint. (ECF No. 50 at 387 n.1 (emphasis added).)

**I. Background**

On or about September 21, 2015, Plaintiffs sent a letter to Defendant Aurora Loan Services, LLC and copied Nationstar. (ECF No. 50-1; ECF No. 64-1 ¶ 1.) The letter states that Plaintiffs have "received a dunning letter notice from AURORA LOAN SERVICES, LLC." (ECF No. 50-1 at 390.) It questions how Nationstar came to service Plaintiffs' defaulted mortgage and how Aurora Loan Services, LLC came to own the Note. (Id. at 391-92.) Attached to the letter is a Creditor Disclosure Statement, which Plaintiffs ask that Aurora Loan Services, LLC answer. (Id. at 393-94.)

On or about October 21, 2015, Plaintiffs sent a second letter to Aurora Loan Services, LLC. (ECF No. 50-2; ECF No. 64-1 ¶ 2.) The letter states that it "is a request for validation made pursuant to the Fair Debt Collection Practices Act 15 USC ¶ 1692g(1)(2)," seeking "competent evidence that [Plaintiffs] have some contractual obligation to pay [Aurora Loan Services, LLC]." (ECF No. 50-2 at 396.) As in their previous letter, Plaintiffs attached a Creditor Disclosure Statement, which they asked Aurora Loan Services, LLC to "complete and return." (Id.)

On or about October 21, 2015, Plaintiffs sent a letter to Prommis Solutions, LLC on behalf of Nationwide Trustee

2

Services, Inc., copying the Consumer Financial Protection Bureau and Nationstar.  (ECF No. 50-3; ECF No. 64-1 ¶ 3.)  The letter is dated October 26, 2015.  (ECF No. 50-3.)  It states that it "is a request for validation made pursuant to the Fair Debt Collection Practices Act 15 USC ¶ 1692g(1)(2)," seeking "competent evidence that [Plaintiffs] have some contractual obligation to pay . . . ."  (ECF No. 50-3 at 399.)  As in their previous letters, Plaintiffs attached a Creditor Disclosure Statement, which they asked the recipients to "complete and return."  (Id.)

On November 4, 2015, Aurora Commercial Corp. sent Plaintiffs a letter (the "Aurora Letter").  (ECF No. 50-4; ECF No. 64-1 ¶ 4.)  It states that it "is in response to [Plaintiffs'] communication dated October 26, 2015. . . ."  (ECF No. 50-4 at 403.)  It notifies Plaintiffs that Aurora Commercial Corp.'s "business records reflect that the above-reference mortgage loan account was service transferred to Nationstar Mortgage LLC effective July 1, 2012 (see attached)."  (Id.)[2]  The Aurora Letter states that Plaintiffs should "direct all future communications to Nationstar Mortgage LLC."  (Id.)

---

[2] Attached to the letter is a photocopy of a June 15, 2012 letter addressed to Plaintiffs, notifying them "that the servicing of [their] loan, that is, the right to collect payments from [Plaintiffs], is being transferred from Aurora Bank FSB (Aurora Bank) to Nationstar Mortgage LLC effective July 1, 2012."  (ECF No. 50-4 at 404.)

On November 4, 2015, Nationstar sent Plaintiffs a letter (the "Nationstar Letter"). (ECF No. 50-5; ECF No. 64-1 ¶ 13.) It states that Nationstar has received Plaintiffs' letter dated October 26, 2015. (ECF No. 50-5 at 405.) The Nationstar Letter states that:

> Some information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside the scope of information that must be provided. However, the information below and enclosed documents should address any of your relevant questions and requests. Enclosed, you will find the following documents: Note and Security Instrument . . . [and] Payment History . . . .

(ECF No. 50-5 at 405-06.) The Nationstar Letter also describes the contents of the Note and Security Instrument and Payment History attachments. It represents that:

> The Note and Security Instrument will validate the above-mentioned loan. These documents will explain our rights to:
>
> • Collect any remaining debt owed under the Note and Security Instrument
>
> • Assess fees and costs to the loan as necessary, including late fees if a payment is received after the specified grace period and legal fees if a loan is in default.
>
> • Inspect the property and charge applicable fees
>
> • Purchase lender placed insurance
>
> • Pay taxes on the mortgagor's behalf

4

(Id. at 405.) It further represents that "[t]he payment history reflects a complete history for the period Nationstar has serviced the loan" and reflects

- When payments were received

- How the payments were applied to the loan

- Any disbursements made from the loan, including, but not limited to, disbursements for taxes, insurance, property inspections, brokers price opinions (BPOs), and legal fees.

- A description for each transaction, with running balances of the unpaid principal and escrow accounts

- The date fees and charges were assessed, if any

- Any amounts paid towards fees

- Any waivers/reversals of fees

(Id. at 405-06.)

At the bottom of each page, the letter contains the following disclaimer:

> Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge of bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.

(Id. at 405-07.)

The Nationstar Letter also notifies Plaintiffs of the current owner of the Note, of Nationstar's servicing

responsibilities, and of records that show a foreclosure was completed on January 5, 2012. (Id. at 406-07.)

On November 18, 2015, Plaintiffs filed a *pro se* complaint against Defendants. (ECF No. 1.) Plaintiffs filed an Amended Complaint on May 6, 2016. (ECF No. 20.)

The Amended Complaint sought (1) a declaratory judgment that Plaintiffs' Note is void as against public policy and in violation of the Truth in Lending Act (the "TILA"); (2) rescission of the Note under the TILA and correspondingly a release of the Deed of Trust encumbering the property and rescission of the foreclosure; (3) relief under the Fair Debt Collection Practices Act (the "FDCPA"); (4) damages for various TILA violations; (5) damages for violations of the Real Estate Settlement Procedures Act (the "RESPA"); (6) damages for Defendants' civil conspiracy, under Tennessee law; (7) damages and other relief for Defendants' fraud and misrepresentation, under Tennessee law; and (8) damages for misrepresentations under the Tennessee Consumer Protection Act (the "TCPA"). (ECF No. 20 ¶¶ 62-108.) Plaintiffs also sought compensatory damages, punitive damages, statutory attorney's fees, expenses, costs, an injunction prohibiting Defendants from selling the property before the property can be returned to Plaintiffs

unencumbered by the Deed, and "other damages, which the Court believes are just." (Id. at 112-13.)

On June 1, 2016, Defendants moved to dismiss Plaintiffs' amended complaint. (ECF No. 25.)

On March 28, 2017, the Court entered an Order dismissing all claims except Plaintiffs' FDCPA claim for alleged violation of 15 U.S.C. § 1692e(2)(A). (ECF No. 34 at 344.)

**II. Legal Standard**

Federal Rule of Civil Procedure 56(a) provides that a party moving for summary judgment must "identify[] each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought" and "show[] that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the record in the light most favorable to the nonmoving party. Loyd v. St. Joseph Mercy Oakland, 766 F.3d 580, 588 (6th Cir. 2014).

To overcome a properly supported summary-judgment motion, the nonmoving party must set forth specific facts showing that there is a "genuine" dispute for trial. Fed. R. Civ. P. 56(c). A "genuine" dispute exists when the nonmoving party presents "significant probative evidence" "on which a reasonable jury

7

could return a verdict for [it]." E.E.O.C. v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)).  The court does not have the duty to search the record for such evidence.  See, e.g., Meachem v. Memphis Light, Gas & Water Div., 119 F. Supp. 3d 807, 813 (W.D. Tenn. 2015) (citing Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)).  The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Ford Motor Co., 782 F.3d at 770 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  "[I]t is black-letter law that the party opposing the motion for summary judgment may not rely solely on the pleadings. . . ."  Lindsey v. Detroit Entm't, LLC, 484 F.3d 824, 830 n.7 (6th Cir. 2007).

Courts must use summary judgment carefully, but when appropriate, it is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut."  F.D.I.C. v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**III. Analysis**

   **A. Plaintiffs' New Claims**

In their response to Defendants' Motion for Summary Judgment, Plaintiffs raise claims of fraud and civil conspiracy. (ECF No. 64 at 502-03.) Similar claims were dismissed in the Court's March 28, 2017 Order. (ECF No. 34 at 337.) Plaintiffs' response also includes a bare request to "Amend and Supplement the complaint." (Id. at 507.) Plaintiffs do not provide a proposed amended complaint or state what the amendments would be. Defendants oppose Plaintiffs' request, to the extent it seeks to amend the complaint, as untimely and futile. (ECF No. 68 at 854-58.)

The Sixth Circuit has repeatedly held that a non-moving plaintiff may not raise new claims for the first time in response to an opposing party's summary judgment motion. See, e.g., Tucker v. Union of Needletrades, Ind. & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005); Desparois v. Perrysburg Exempted Village School District, 455 F. App'x 659, 666 (6th Cir. 2012) ("[A] plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion."); Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007). Allowing a plaintiff to do so would "subject defendants to unfair surprise."

Tucker, 407 F.3d at 788 (citing Guiffre v. Local Lodge No. 1124, 940 F.2d 660 (6th Cir. 1991) (refusing to hear claims raised for the first time in response to a summary judgment motion, because "the defendants had no opportunity to investigate them when they conducted their own discovery")).

The appropriate avenue for a non-moving plaintiff to bring new allegations before the Court at the summary judgment stage is a motion to amend the complaint. See Desparois, 455 F. App'x at 666. Courts are not required to construe a request to amend contained in a brief opposing a grant of summary judgment as a motion to amend, and may decline to consider the new claims altogether. Willecke v. Kozel, 395 F. App'x 160, 168 (6th Cir. 2010) (citing PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 699 (6th Cir. 2004)); Desparois, 455 F. App'x at 666.

Plaintiffs have not filed a motion to amend their complaint. They have improperly sought to raise new claims in response to Defendants' Motion for Summary Judgment. The Court declines to consider Plaintiffs' request as a motion to amend the complaint. Plaintiffs' fraud and civil conspiracy claims are not before the Court.

## B. Plaintiffs' FDCPA Claim - § 1692e(2)(A)

Defendants argue that they are entitled to summary judgment on Plaintiffs' § 1692e(2)(A) claim because the November 2015 letters are not debt collection activities in violation of 15 U.S.C. § 1692e. (ECF No. 51 at 451.) They contend that the letters were "informational" and in "response to Plaintiffs' inquiry." (Id. at 453.) Defendants argue that the inclusion of a "boilerplate FDCPA disclaimer" at the bottom of the letterhead and a balance statement in the Nationstar Letter do not transform it into a debt collection activity. (Id. at 451-52.)

Plaintiffs do not argue that the Aurora Letter is a debt collection activity. (See ECF No. 64.) They concede that the letter was sent in response to Plaintiffs' inquiry. (ECF No. 64-1 ¶¶ 3-4, 6.) They concede that the letter informs "Plaintiffs that Aurora Bank, FSB had merged into ACC," that the mortgage servicing was "transferred to Nationstar effective July 1, 2012," and "that all future communication should be directed at Nationstar." (Id. ¶ 5.) They concede that the letter does not expressly demand payment or threaten any legal action. (Id. ¶¶ 7-8, 11.) They concede that the letter does not list a payment due date. (Id. ¶ 9.)

Plaintiffs argue that the Nationstar Letter constitutes a debt collection activity for four reasons. First, Plaintiffs argue that Nationstar identified itself as a debt collector attempting to collect a debt at the bottom of its letterhead. (ECF No. 64 at 497.) Second, Plaintiffs argue that Nationstar threatened to take action when it described its rights under the "Note and Security Instrument." (Id. at 497-98.) Third, Plaintiffs argue that "Nationstar expressly <u>referenced</u> the amount owed in the [Payment History] . . . and [its] right to collect under the note/deed of trust." (Id. at 498 (emphasis added).) Fourth, Plaintiffs argue that "[b]<u>y reference to</u> the Note and Security Agreement without delineation, Nationstar <u>explicitly</u> threatened legal action under the terms of the note and deed of trust. . . ." (Id. (emphasis added)).[3]

Section 1692e prohibits the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To prevail under this section, "a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA <u>while engaging</u>

---

[3] Plaintiffs also claim the Nationstar Letter referred to (1) the status of Plaintiffs' forbearance, (2) a suspension account, (3) the ownership of the Note, (4) compliance with federal and state law, and (5) the payment history report. (ECF No. 64 at 498-500.) Plaintiffs do not explain how or whether those references transform the Nationstar Letter into a debt collection activity under the FDCPA. Even if the references were "false, deceptive, or misleading representation[s]" under section 1692e, they were not made "in connection with the collection of any debt" for the reasons discussed in the remainder of this subsection.

in debt collection activity." Clark v. Lender Processing Servs., 562 F. App'x 460, 465-66 (6th Cir. 2014) (emphasis added) (citing Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 459-60 (6th Cir. 2013)).

Not every communication between a debt collector and a debtor is a debt collection activity. Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) (citing Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 385 (7th Cir. 2010)). Whether a communication constitutes a debt collection activity is a factual inquiry. The "communication need not itself be a collection attempt; it need only be 'connect[ed]' with one" and have the "animating purpose of . . . induc[ing] payment by the debtor." Id. The animating purpose of a communication is a question of fact generally given to a jury. Id. Nevertheless, summary judgment is appropriate if a reasonable jury could not find that the animating purpose of the communication was to induce payment. Id. (citing Estep v. Manley Deas Kochalski, LLC, 552 F. App'x 502, 505 (6th Cir. 2014); Grden, 643 F.3d at 173.).

At summary judgment, courts weigh seven factors when deciding whether a reasonable jury could find that the animating purpose of the communication was to induce payment:

> (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.

Goodson v. Bank of Am., N.A., 600 F. App'x 422, 431 (6th Cir. 2015) (citing Grden, 643 F.3d at 173; McDermott v. Randall S. Miller & Assocs., P.C., 835 F. Supp. 2d 362, 370-71 (E.D. Mich. 2011)).

In Goodson, the Sixth Circuit weighed the seven factors in determining whether two letters sent from the defendant debt collector in July 2011 and October 2011 were debt collection activities under the FDCPA. 600 F. App'x at 430-41. The court concluded that the first, second, and fifth factors weighed in favor of finding that the July 2011 letter constituted a debt collection activity because "the letter was sent by a debt collector who had no relationship with [the plaintiff] prior to her default, and stated the balance owed as of June 30, 2011. . . ." Id. at 432. The court found the remaining factors did not support finding the letter was a debt collection activity. The court concluded that "[t]he letter did not make an express demand for payment, list a payment due date or threaten consequences should [the plaintiff] fail to pay. Further, the

14

standard disclaimer language -- which stated that [the defendant] was 'a debt collector attempting to collect a debt' -- did not, by itself, transform the informational letter into debt collection activity." Id. (citing Gburek, 614 F.3d at 386 n.3; Maynard v. Cannon, 401 F. App'x 389, 395 (10th Cir. 2010)). The court concluded that the "animating purpose" of the letter was to inform the plaintiff of a loan servicer change, not to induce payments on a default mortgage. Id.

The court also concluded that, on balance, the factors weighed in favor of finding the October 2011 letter was not a debt collection activity. That letter was sent in response to plaintiff's inquiry. The court reasoned that, "[w]hen communications are 'merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely,' . . . inducing payment is not [the communication's] animating purpose." Id. (quoting Grden, 643 F.3d at 173). The court rejected the argument that a letter sent in response to a debtor inquiry could be used to show a "strategy to make payment more likely." Id. at 433. The court also found that "the letter did not make a demand for payment, state a balance due, indicate that it was an attempt to collect a debt, or threaten negative consequences should [the plaintiff] fail to pay." Id. at 432.

15

Here, the November 2015 letters do not constitute debt collection activities. The Aurora Letter was sent in response to Plaintiffs' October 26, 2015 communication, and informed Plaintiffs that Nationstar would be servicing the loan. (ECF No. 50-4.) It does not make a demand for payment, state a balance due, indicate that it is an attempt to collect a debt, or threaten negative consequences should Plaintiffs fail to pay. (See id.) On balance, a reasonable jury could not find that the animating purpose of the Aurora Letter was to induce payment.

The Nationstar Letter was sent by a debt collector that had no relationship with Plaintiffs, and attached a "Payment History" that had a remaining balance. (ECF No. 50-5.) Nevertheless, the letter was sent in response to Plaintiffs' October 26, 2015 communication. (ECF No. 64-1 ¶¶ 13, 15.) It did not make an express demand for payment, list a payment due date, or expressly threaten consequences if Plaintiffs failed to pay. Nationstar's reference to the Note and Security Instrument and the Payment History, along with its explanation of the contents of those attachments, was informational. Nationstar did not explicitly demand payment, set a due date, or threaten legal action. The animating purpose of the Nationstar Letter was to respond to Plaintiffs' "validation"

request and inform them that Nationstar was servicing their loan. (See ECF Nos. 50-3 & 50-5.) As in Goodson, standard disclaimer language does not transform an informational letter into a debt collection activity. On balance, a reasonable jury could not find that the animating purpose of the Nationstar Letter was to induce payment.

Because a reasonable jury could not find that the animating purpose of the November 2015 letters was to induce payment, summary judgment on Plaintiffs' § 1692e(2)(A) claim is appropriate. Defendants' Motion for Summary Judgment is GRANTED.

**IV. Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

So ordered this 19th day of April, 2018.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE